OPINION
{¶ 1} Tony Mantle appeals from a summary judgment for United Ohio Insurance Company on its complaint for declaratory *Page 2 
judgment. The issue presented in this appeal is whether the trial court correctly concluded that United Ohio Insurance has no duty to defend or indemnify Tony Mantle on a claim for personal injuries Nathan Sluss sustained during a fight between the two men.
 {¶ 2} Tony Mantle and Nathan Sluss are next-door neighbors who live on Neff Road in Dayton. On October 2, 2005, around 11:00 p.m., Mantle and Sluss got into a fight after Sluss's vehicle ran over a large rock that separates Mantle's and Sluss's properties. During that fight, Mantle stabbed Sluss in the chest with a knife. The parties' recollection of that altercation differed, and each version was set forth by the trial court as follows:
 {¶ 3} "According to Mr. Sluss, he was talking about what happened with Mr. Mantle's son, Keith Zimmerman (hereinafter `Keith'), who he was friends with, when Mr. Mantle came out of his house then quickly and without warning lunged around Keith and punched Mr. Sluss in the temple. (Sluss Depo. p. 17, 25-29.) Mr. Mantle and Mr. Sluss exchanged blows until Keith got between them and pulled Mr. Mantle away by his arms. (Sluss Depo. P. 30.) When Mr. Mantle broke free from Keith and came towards Mr. Sluss again, Mr. Sluss delivered the final punch sending Mr. Mantle to the ground. (Sluss Depo. p. 30-31.) *Page 3 
Keith then told Mr. Sluss that he was cut. (Sluss Depo. P. 31.) Mr. Sluss's complaint alleges that the cuts Mr. Sluss received during the fight required approximately twenty-two stitches on his chest and three stitches on his nose.
 {¶ 4} "Mr. Mantle's recollection was not the same as Mr. Sluss's. Mr. Mantle states that Mr. Sluss, upset about his vehicle hitting a boulder which was in Mantle's yard by the street, proceeded to bend down and flip the boulder twice toward Mantle's house, `Letting me know he is not putting up with these rocks.' (Mantle Depo. P. 45-46.) On the third attempt to move the boulder, Mr. Sluss said, `I'm tired of this F'in rock,' picked it up six to ten inches off the ground and flipped it toward Mr. Mantle. (Mantle Depo. p. 46.) Mantle states, `when it came down, it came down towards my feet and I had to jerk my feet back * * * when it almost hits my foot, I punched him.' (Mantle Depo. p. 46-47.) Mr. Sluss and Mr. Mantle then exchanged blows until Keith got between them and wrapped Mr. Mantle into a bear hug. (Mantle Depo. p. 46-47.) As far as Mr. Mantle was concerned, the fight was over at this point. (Mantle Depo. p. 52.) Hearing his wife, Ellen Mantle (hereinafter `Mrs. Mantle') calling him back to the house, Mr. Mantle turned toward the house and away from Mr. Sluss. (Mantle Depo. 52-53.) Mr. Sluss then ran full *Page 4 
tilt toward Mr. Mantle and punched him in the face. (Mantle Depo. p. 52.) Then, he states, `Basically I'm on the ground and I don't know how far this is going to go because I'm almost knocked out * * * I felt like my life was in danger at that point.' (Mantle Depo p 56.) While Mr. Sluss was on top of Mr. Mantle and hitting him, Mr. Mantle got a knife out of his back pocket. (Mantle Depo. p. 56-57.) Mr. Mantle did not realize his knife was cutting Mr. Sluss' body. (Mantle Depo, p. 57.) He said, `I was just fending him off of me because I'm down.' (Mantle Depo. P. 57.)
 {¶ 5} "Keith testified by affidavit that after Mr. Mantle threw the first punch, both parties exchanged blows. Keith stated that he separated the parties and stopped the altercation by putting Mr. Mantle in bear hug. He further stated that, at this point, Mr. Mantle did not make an attempt to fight Mr. Sluss, but turned and started walking toward his house when Mr. Sluss hit Mr. Mantle with his fists, sending Mr. Mantle to the ground.
 {¶ 6} "Mrs. Mantle testified by affidavit that when she went outside on that night she `saw that Keith had [Mr. Mantle] in a bear hug and the fight that apparently happened seemed to be over.' She stated that when she told Mr. Mantle to come back into the house he started to turn toward her, but *Page 5 
Mr. Sluss punched Mr. Mantle in the face and knocked him to the ground."
 {¶ 7} As a result of this altercation, Mantle was indicted on one count of felonious assault, R.C. 2903.11(A)(2). Mantle subsequently entered a no contest plea to the felonious assault charge, was found guilty, and was sentenced by the trial court to five years of community control sanctions.
 {¶ 8} Sluss commenced a personal injury action against Mantle on claims for relief alleging assault and battery and negligence, seeking compensatory and punitive damages for the injuries Sluss sustained during the fight. Mantle's answer pled the affirmative defense of self-defense.
 {¶ 9} United Ohio Insurance Company, which had issued a homeowners insurance policy to Mantle that was in effect at the time of this fight, commenced an action for declaratory judgment, seeking a declaration that it has no duty to defend or indemnify Mantle in connection with the personal injury action Sluss filed against Mantle.
 {¶ 10} United Ohio Insurance subsequently filed a motion for summary judgment, relying on an exclusion in its policy for expected or intended bodily injury by an insured. United Ohio Insurance argued that the facts of Sluss's claims for relief precludes coverage, and there is no viable self-defense *Page 6 
claim on those facts which might otherwise constitute an exception to the intentional injury exclusion.
 {¶ 11} On October 5, 2007, the trial court rendered its Decision and Entry granting United Ohio Insurance Company's motion for summary judgment. Tony Mantle timely appealed to this court.
 {¶ 12} FIRST ASSIGNMENT OF ERROR
 {¶ 13} "THAT THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO DUTY TO DEFEND DUE TO THE INTENTIONAL ACTIONS OF THE DEFENDANT-APPELLANT."
 {¶ 14} SECOND ASSIGNMENT OF ERROR
 {¶ 15} "THAT THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO DUTY TO DEFEND UNDER THE EXCLUSION FOR SELF-DEFENSE."
 {¶ 16} In Harless v. Willis Day Warehousing Inc. (1978),54 Ohio St. 2d 64, 66, the Ohio Supreme Court stated that for summary judgment to be appropriate, it must appear that; "(1) There is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." See also Ohio Civ. R. 56(C). Furthermore, the moving party has the burden of *Page 7 
showing that there is no genuine issue as to any material fact.Harless, 54 Ohio St.2d at 66.
 {¶ 17} The Harless Court also noted that Ohio Civ. R. 56(E) requires a party opposing a summary judgment motion to show specific facts demonstrating that there is a genuine issue of material fact.Id., at 65-66. Moreover, in a motion for summary judgment a non-movant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial. Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. A trial court must examine all appropriate materials filed before ruling on a motion for summary judgment. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358,1992-Ohio-95.
 {¶ 18} Civ. R. 56(C) contains an inclusive list of the materials to be considered. The pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, are the only appropriate materials a court may examine. Civ. R. 56(C); Dresher v. Burt, supra. In considering this motion for summary judgment, inferences drawn from the underlying facts will be viewed in a light most favorable to the non-moving party. Harless; Dresher. *Page 8 
 {¶ 19} Mantle's homeowners' policy with United Ohio Insurance provides, in part:
 {¶ 20} "SECTION II — LIABILITY COVERAGES
 {¶ 21} "A. Coverage E — Personal Liability
 {¶ 22} "If a claim is made or a suit is brought against an `insured' for damages because of `bodily injury' or `property damage' caused by an `occurrence' to which this coverage applies, we will:
 {¶ 23} "1. Pay up to our limit of liability for the damages for which an `insured' is legally liable. Damages include prejudgment interest awarded against an `insured;' and
 {¶ 24} "2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Out duty to settle or defend ends when our limit of liability for the `occurrence' has been exhausted by payment of a judgment or settlement.
 {¶ 25} "SECTION II — EXCLUSIONS
 {¶ 26} "E. Coverage E-Personal Liability and Coverage F-Medical Payments to Others
 {¶ 27} "Coverages E and F do not apply to the following:
 {¶ 28} "1. Expected Or Intended Injury
 {¶ 29} "`Bodily injury' or `property damage' which is *Page 9 
expected or intended by an `insured' even if the resulting `bodily injury' or `property damage':
 {¶ 30} "a. Is of a different kind, quality or degree than initially expected or intended; or
 {¶ 31} "b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.
 {¶ 32} "However, this Exclusion E.1. does not apply to `bodily injury' resulting from the use of reasonable force by an `insured' to protect persons or property."
 {¶ 33} These provisions clearly demonstrate that United Ohio Insurance Company's homeowner's policy excludes personal liability coverage for bodily injury which is "expected or intended by an insured." Section II-Exclusions(E)(1). That the bodily injuries Mantle inflicted on Sluss during their fight were intended and/or expected is a necessary inference from both the facts surrounding the fight and Mantle's resulting conviction for felonious assault. Farmers Insurance v.Martin, Clermont App. No. CA2004-03-022, 2005-Ohio-556; Preferred RiskInsurance Co. v. Gill (1987), 30 Ohio St.3d 108; Metropolitan Propertiesand Casualty Insurance Co. v. Lengyel (May 31, 2000), Summit App. No. 19460, 19479; Arrowood v. Grange Insurance Co., Cuyahoga App. No. 82487, 2003-Ohio-4075; *Page 10 Campobasso v. Smolko, Medina App. No. 3259-M, 2002-Ohio-3736. Under the rule of Dresher v. Burt, in order to prevail against the motion for summary judgment, Mantle was required to offer evidence that preserves a genuine issue of material fact regarding whether the bodily injuries he inflicted on Sluss during their fight were intended or expected by Mantle.
 {¶ 34} Mantle argues that while he may have been the initial aggressor who started this fight with Sluss by throwing the first punch, he withdrew from that fight when his son, Keith Ferguson, placed him in a bear hug, and Mantle turned away from Sluss and started toward his front porch in response to his wife, who was calling him back to the house. Mantle claims that a second fight commenced while Mantle was still in his son's grasp, when Sluss then hit Mantle in the face, knocking him to the ground. Sluss continued to hit Mantle while he was down on the ground, making Sluss the aggressor who started that fight, and Mantle thereafter simply acted in self-defense.
 {¶ 35} There is an exception to the general rule that a liability insurer is not obligated to defend or indemnify the insured for intentional acts that applies when the insured acts in self-defense. The affirmative defense of self-defense, if established, is an exception to the intentional *Page 11 
injury exclusion provision in Mantle's homeowner's policy. See: Section II — Exclusions(E)(1); Preferred Mutual Insurance Co. v. Thompson
(1986), 23 Ohio St.3d 78.
 {¶ 36} To establish self-defense, the following elements must be shown: (1) the claimant was not at fault in creating the situation giving rise to the affray, (2) the claimant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force, and (3) the claimant must not have violated any duty to retreat or avoid the danger. State v. Melchior (1978), 56 Ohio St.2d 15. In discussing a recognized exception to the rule that a person cannot claim self-defense if he was at fault in creating the situation that gave rise to the affray, the Supreme Court stated:
 {¶ 37} "Even though the accused may in the first instance have intentionally brought on the difficulty and provoked the occasion, yet his right of self-defense will revive and his actions will be held justifiable upon the ground of self-defense in all cases where he has withdrawn from the affray or difficulty in good faith as far as he possibly can, and clearly and fairly announced his desire for peace."Melchior, p. 21.
 {¶ 38} Construing the evidence and the reasonable *Page 12 
inferences therefrom most strongly in Mantle's favor, as we must, we agree with the trial court that there is no genuine issue of material fact regarding whether Mantle was at fault in creating the situation giving rise to this fight and whether he acted in self-defense.
 {¶ 39} Mantle concedes he started the fight by throwing the first punch. Mantle claims that this incident consisted of two separate fights, however, because he had withdrawn from the first fight and that Sluss was the aggressor in the second fight. Therefore, according to Mantle, he could claim his self-defense rights with respect to the injuries Sluss suffered in the second fight.
 {¶ 40} We do not agree with Mantle that being prevented from inflicting further injuries on Sluss when he was restrained in a bear hug by his son is sufficient to demonstrate that Mantle withdrew from the fight in good faith as far as he possibly could, in as much as Mantle never announced a desire for peace. Melchior, at 21. There is a difference between withdrawing from a fight and making that intention clear by verbal announcement, and being physically restrained so that further participation in the fight is made difficult or impossible. Evidence Mantle offered that he began to heed his wife's call to return to his house likewise *Page 13 
fails to demonstrate a clear and fair announcement of Mantle's desire for peace.
 {¶ 41} Because Mantle failed to demonstrate a genuine issue of material fact as to whether he acted in self-defense, he is not entitled to coverage under United Ohio's policy due to the exclusion for injuries intentionally inflicted by the insured. The trial court properly granted United Ohio Insurance Company's motion for summary judgment.
 {¶ 42} Mantle's assignments of error are overruled. The judgment of the trial court will be affirmed.
DONOVAN, J. And GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
 Hon. Michael T. Hall *Page 1